BIESEIGAL *vs.* THE NEW YORK CENTRAL RAIL ROAD
COMPANY.

Under what circumstances an individual suing a rail road company, to recover
damages for injuries sustained by him in consequence of being run over by
an engine on a public street in a city, should be nonsuited on the ground
that his own negligence contributed to the injury.

APPEAL from a judgment of nonsuit, entered at a special
term, after a trial at the circuit. The facts are suffi-
ciently detailed in the opinion of the court.

*John H. Martindale,* for the plaintiff.

*H. R. Selden,* for the defendant.

*By the Court,* KNOX, J. This action was brought to re-
cover damages for injuries sustained by the plaintiff, in con-
sequence of being run over by the defendant's engine, on a
public street in the city of Rochester. It was tried before
Justice SMITH and a jury, at the Monroe circuit, in January,
1861, when the plaintiff was nonsuited, on the ground that
his own negligence contributed to the injury.

The following facts appeared. The plaintiff, on the 27th
of September, 1858, at about 4 o'clock P. M. was going south
toward the business part of the city of Rochester, on the east
side-walk of St. Joseph street, and as he reached the north
side of the rail road, where it crosses that street, a locomo-
tive, drawing a long train of freight cars, was approaching
from the west, and about to cross the street. The plaintiff
continued on toward the south, on the line of said side-walk,
until he had crossed the northernmost track of the rail road,
and stopped upon the second track, (there being five parallel
tracks at that point,) until the freight train had crossed the
street. The two north tracks, east of St. Joseph street, were
occupied by empty freight cars, 10 or 12 in number—box
cars, eight feet high—the northwest end of which was so
near the line of the side-walk, that the plaintiff could nearly

touch it with his hand as he passed. He stood, while the freight train was passing, at the west end of the line of empty freight cars on the second track. The train in passing made a great deal of noise. As soon as it passed, the plaintiff looked east and the track was clear as far as he could see, which was only eight or ten feet, in consequence of the obstruction by the empty freight cars, and he started to go south across the other tracks, at the same time turning his face to the west, toward the depot, and continued to look in that direction until he approached the north line of the third track, when he was struck on the left shoulder, turned around and thrown down, and one leg crushed so as to require amputation, and the other very badly injured by the tender of the locomotive which was backing down from the east toward the depot at the west, and was at that moment crossing St. Joseph street. He did not look east after crossing the south rail of the second track. The tracks at that point were all perfectly straight, and the spaces between them seven or eight feet, as laid down on the map. The engine, tender and freight cars all project over the track, about eighteen inches. The engine was backing down very fast, and evidence was given tending to show that the bell was not rung until after St. Joseph street had been crossed and the plaintiff injured. There was no flagman at this crossing at the time of the accident, though there had been one the week before. The crossing was in a populous and thickly settled part of the city. The plaintiff was 36 years of age, resided on St. Joseph street, two miles north of the rail road, was a carpenter, and worked a great deal in the city, crossing the rail road track very often; sometimes every day, and sometimes not in three or four weeks; sometimes saw empty cars standing there, but not so near the side-walk; took no notice how near; had crossed the track twice before, the same day, at the same place.

There was no evidence of bad habits on the part of the plaintiff, but on his way up from his house to the rail road,

and about twenty minutes before he was injured, he stopped at a grocery, complained of being unwell, and took a table-spoon full of caraway seed bitters.

The question now is—" Was the nonsuit properly grant-ed ?" and that is answered by the reply which shall be made to the question—" Did the plaintiff's own negligence con-tribute to produce the injury of which he complains ?" for a multitude of cases might be cited to sustain the proposition that a party cannot recover for an injury of which his own negligence is in whole or in part the proximate cause, though there be gross negligence on the part of defendant, short of willful wrong.

Indeed, this has been so often held, that in the case of *Johnson* v. *The Hudson River Rail Road Company*, (20 *N. Y. R.* 68,) Judge Denio says the proposition must now be considered " a legal postulate."

In my judgment, the facts present a clear case of negli-gence on the part of the plaintiff. Here were five parallel tracks, over which the plaintiff had passed very often, some-times every day in three or four weeks, and quite near the depot in the city. From the number of the tracks, and the proximity of the depot, the plaintiff must have known that passenger and freight trains were both frequently passing each way, and liable to pass each way at any, and the same, or near the same moment of the day. To go upon the track, therefore, at such a point, without looking up and down the track to see whether it would be safe to do so, was extreme carelessness. He had no ground for supposing that because one train of cars had but a moment before passed east on one of the tracks, another train of cars would not pass west on another of those tracks, at the same time, or near the same time. Indeed, he ought to have known, from the number of these tracks, that this was very likely to happen, as it did happen in this instance.

That there were obstructions on the track, and that the road crosses it at such an angle as made it difficult to see

whether there were any cars moving on them, should have excited the plaintiff to greater caution, and not have lulled him into carelessness. In a word, instead of stepping upon the track, and looking toward the west only, where it does not appear that there was any thing to attract and fix his attention, he should have looked toward the east, and then this accident would not have taken place.

If the plaintiff cannot be said to have been guilty of negligence in this case, I can hardly imagine one where it can be imputed, short of that where the party puts himself upon the track of a road with an intention of being struck by the moving cars.

While the courts should and do require on the part of rail road companies, "that their road and all its appurtenances be in perfect order, and free from any defect, which the utmost vigilance, aided by the highest degree of knowledge or skill, can discover or prevent," and that the road and its cars, and engine, etc. be under the control and management of men of skill and experience in their several stations, in order that the public may enjoy, with as little risk of life and limb as possible, the incalculable benefits of this method of travel, they should also require, for the same reason, that all persons, in and about the cars, or crossing the track, should exercise a vigilance and circumspection, commensurate with the danger which may reasonably be apprehended, from the nature of the motive power employed, and the velocity with which these carriages are driven.

As there was no disputed question of fact in the case, the question is one of pure law for the court, and I think it was properly ruled at the circuit.

Motion for new trial denied.

[Monroe General Term, March 4, 1861. *Smith,* *Johnson* and *Knox,* Justices.]